Case number 15-3605, Aaron A. Gibson versus Ed Sheldon, Warden. Argument not to exceed 15 minutes per side. Mr. Sweeney, you may proceed for the appellant. Good morning, your honors. If it pleases the court, I'm Tim Sweeney here on behalf of Aaron Gibson and I'd like to reserve four minutes for rebuttal if I could please. A significant process question presented in this aggravated murder conviction arising from the state of Ohio. The questions for this court, as I'm sure the court knows, essentially two questions. Did the state's evidence presented at trial, was it sufficient to establish these most serious crimes under the Jackson standard? Secondly, because we're in habeas, did the Ohio appellate court, intermediate court's determination that the evidence was sufficient, was that a reasonable application of Jackson? The answer to both of those questions is no. The evidence wasn't sufficient. The intermediate appellate court's determination of the issue was unreasonable. It was not a reasonable application of Jackson. This case is the most serious kind of case you have in Ohio, aggravated murder. The highest level of murder. This was a death penalty case in the beginning, this Aaron Gibson case. Close to trial, the death penalty aspect of the case was taken off the table. But it proceeded as an aggravated murder charge, which requires intent to kill and aggravated robbery. You have to know there's going to be a robbery. There's got to be proof of these things. Purpose to kill. The allegation or the charge against Gibson was complicity. He was convicted because he aided or he was complicit with Ricks, Tom Ricks the shooter, in this crime. So you have to prove, as the court knows, that the complicit defendant shared that specific intent to kill. That the defendant shared the intent to rob. The intent to commit aggravated robbery, which means knew there was a gun. The evidence just does not support these required elements under the Due Process Clause. You've got, at most, Gibson being the driver who transported Ricks somewhere in the vicinity of the small little house, townhouse, where this happened. That's really all you got with respect to in advance of this crime. They were expecting him. There was evidence that a jury could infer that they were expecting him. They were expecting Gibson and Ricks. I think there was evidence of that. But just so we get everything. Yeah. This is a very fact-intensive analysis that the court has to undertake. These sufficiency questions always are. But there's a conviction here for drug trafficking. I think if you look at the aggravated murder and aggravated robbery, is the exact same evidence that convicts him of being complicit in the drug deal that was supposed to happen. Now, was he expecting... He was convicted of that in this case too? He was. He's serving 10... If we reverse the murder, he'd still go to jail for the... Yeah, he would. He received a 10-year sentence. He received 5 on the marijuana trafficking, complicit with Ricks. 10 on the cocaine deal, complicit with Ricks. Those were made concurrent. So he's got that 10 at least. That's this deal. That's this deal. That's what supposedly happened behind... Not challenging those on appeal. No. So the question is, is there sufficient evidence to convict him of the more serious crimes, the murder? There's no evidence he was there. The best he... And there isn't. I mean, they may have... He was close. He was somewhere in the area. Somewhere... There's evidence. There's an inference, I think, Judge Rogers, you could make, that he was within a mile or two or even more of this apartment as the driver, perhaps waiting for his friend to come out after the drug deal went down. But that's not aggravated murder. What would the jury find to be sort of a reasonable story of what happened? I mean, why is he driving around? It's very fact-intensive. Well, I think... A drug deal. A drug deal. That's unbelievable that they would be waiting for him. I'm just asking. But why wouldn't... Why wouldn't the jury possibly say, that's just not really believable that he'd be driving around when he's the one that's being expected? Well, I think they were both expected. I don't know what was... I don't think it really mattered which one. The deal was, a cocaine deal was expected to go down and Ricks was introduced to this Harper guy the night before. There's a record evidence of that. So there was this expectation of a cocaine deal. The girlfriend, I think her name was King. So Harper only knew Ricks. Is it Ricks? Harper knew Ricks. But he knew Gibson more. He knew Gibson. Gibson was his friend. Gibson was his friend. So I think what a jury might have been able to see here is that there was a drug deal and he was convicted of the drug deal, but he wasn't at the scene of the murder. There's no evidence that he was in the house or that he was protecting the house or that he was serving as some sort of guard. Would he have been convinced that if Ricks told him what he did when he got back in the car under your theory? No. No. I mean, no. You have to do it. There's no, I'll help you get away with it because... I mean, you've got to have purpose to kill. You've got to share. For aggravated murder, there's got to be purpose, intent to kill. You've got to prove that at the time, Ricks and Harper... It would at least have some evidentiary value to whether there was intent to kill if the person says, oh, you killed him, did you? Surprise, surprise. Well, let's go spend that money. It's a little bit of a different reaction from, oh my God, you killed him. Let's go to the police. Yeah. There's not the evidence of that. I mean, I think you have to have... He comes back in the car, he's got a wad of money. They go and spend it. There is evidence of that, right? Or evidence a jury could find. Well, I think, and that's the theory, that this was a drug deal. And so the fact that he comes back with money, yeah, no kidding. Of course he's going to come back. If you're Gibson, he's coming back with money. Good. The drug deal went down. That's why I don't see... This Kaminsky case we cited out of the Third Circuit really is closely analogous here. I think the evidence in the Kaminsky case, where there was this Kaminsky guy was allegedly the one that got the deal together, the big time drug deal. And his two friends ended up getting killed by the people he set them up with. And the evidence against Kaminsky and his involvement was so much stronger than that against Aaron Gibson here. Yet the Third Circuit in Kaminsky, applying AEDPA, found that there was insufficient evidence of the aggravated murder charge. And this is a case where Kaminsky testified. He got up and took the stand and explained his story, which the jury rejected out of hand. He said, I wasn't involved. I didn't even know there was going to be a drug deal. He professed his innocence. The jury rejected it. And you had evidence about his involvement that was much stronger than you have here with respect to Gibson. And the evidence the Third Circuit held under due process standards to convict him of that most serious crime. Now, he was convicted of the drug deal. He was convicted of that, and he's serving his time for that. But that's this case. At best, you've got Gibson being the driver for a drug deal that went down. So when you've got money afterwards, okay. That doesn't mean you can infer, you can make a double leap, a double inference, that because there... He doesn't call his girlfriend anymore. I don't. I mean, I think the testimony was that he found out after the fact that his friend had been killed. And he found out after the fact that he was with the guy that killed him. I mean, I think that... And who testified that he found that out? He found that out when? The police testified to that effect based on their statements that they obtained from in this interview they had with him on March the 19th, which is just was originally digitally recorded, but then the digital recording was lost. But that evidence came from the law enforcement officers who spoke to Gibson. And Gibson... You don't know when Gibson says that he found it out. I think the evidence was that he found it out within days of it happening. And so there was... You might have called her within those days. Yeah. But again, Your Honor, proof beyond a reasonable doubt of a purpose to kill. I mean, you find out the guy's been killed. I'm not the jury. I'm just seeing whether the jury could have reasonably come to this... See, I don't think they could. I think what you're doing, and I think this is what judges should do. They should probe this evidence. But I think when you come down to it and you look at it fairly, you think, okay, could they have thought this? And you say, yeah, they could have, but if they did, they'd be speculating. I mean, and they can't do that. They can't guess. The inference has to be reasonable. They can use circumstantial evidence to come to this. Absolutely. But this court... It looks like, yeah, his little case where he was involved, he was in it before, he was in it after. He acted like someone would act if he was in it. Boy, that sounds... I tell you, that sounds an awful lot like guesswork, and it sounds like innuendo. It sounds like guesswork, but it also sounds like how a lot of people make decisions. Yeah, but this is, you know, the highest level of murder, and, you know, it puts you away for your life. And the evidence just doesn't... This court has talked about reasonable speculation not being sufficient. We cited in our brief, I think it's Newman. That was a decision from, not too long ago, I think it was a 2008 or 2009 decision. There's also a Brown case. These are all sufficiency cases. Your narrative, your alternative narrative, not that you have to have one, is that he was driving around, and the guy went in there to do a deal from Gibson's perspective. Either it went wrong or Ricks got greedy or something happened and he killed him. He took the money, took the, whatever it was, 20 grand that was seen sitting there or something like that. That was the testimony. And got back in the car and said, wow, that went great. Here's the money. Let's go have fun with no mention of the murder, or maybe even mention of the murder. I mean, mention of the murder, and the guy says, well, he had it coming anyway, or I don't care. It's good money. And off they went. Right. I mean, I don't know that I would go quite that far with respect to some of it, but I think the evidence, the jury could reasonably infer based on the cell tracking data that Gibson did, in fact, drive, that he did, in fact, return to Detroit with Ricks, and that they're, based on the government's arguments with respect to going into the casino with money and making the call to Stanley Pierce, that there was money after the drug deal. But he was convicted of the drug deal. I mean, that was, that doesn't make him a murderer. That's the Kaminsky case. I mean, Kaminsky did the drug deal too. In fact, Kaminsky helped dispose of the bodies. Aiding and abetting in the classical term, that's not included in complicit, is that correct, under Michigan law? Well, this is Ohio now. Oh, Ohio, I'm sorry. Yeah, I mean, it's aiding and abetting complicity. I mean, under Ohio law. Is it something different under Ohio law? I think it's all under, all within the same statute. Complicity and aiding and abetting are defined within the same statute, and the instruction is. I just think whether they're speculating or whether they're using circumstantial evidence, that it's easier to conclude that he was aiding and abetting than that he helped plan it ahead of time, that he was aiding and abetting after. You can aid and abet classically. You don't even know the crime occurred. If a guy said, I just murdered somebody, will you hide me out? That's aiding and abetting, right? Not in this case. I mean, this case required, in order, and this is the instruction. It's different from sort of generic. Perhaps so. There had to be proof that he shared the intent to kill, and that the purpose to kill was there. There had to be proof of that. Now, the best they have is he dropped them off. At that point in time, when he dropped them off, where is the evidence that he knew he was going to be robbed, that he knew he was going to be killed? I mean, as opposed to evidence that he knew a drug deal was going to go down. He was convicted of that. There's no evidence. The evidence is insufficient. This is a due process case, and due process demands more when you're putting people away for aggravated murder. I think we understand your argument. Other questions? The question on this appeal is whether a juror could reasonably find that Gibson intended to rob and kill Calvin Harper, the victim, not whether the evidence supports no other possibilities. And there are three aspects of this case which would allow a reasonable juror to find the requisite intent. The first one is there was no drug deal here. Gibson did not have the capacity to provide any drugs. The so-called drug deal that he set up was merely a ruse to allow Ricks to gain easy access to the victim's home without raising his suspicion. The evidence that I would point to... Wasn't he convicted of a drug crime as well? He was convicted of an offer to sell. He was not convicted of actually committing a crime. Completing the deal. Consummating the deal. And yes. He made an offer to sell even though he didn't have anything to sell. Yes. And he made that offer to sell so that he could basically trick Calvin into amassing large sums of money so he could complete the robbery. Now the evidence that would support the state's theory, which was, by the way, this theory was presented in closing argument to the jury, was that he owed a large... Gibson owed a large debt to his drug dealer. And in fact, his drug dealer was threatening him during this time and stalking him. To the extent that I believe it was the day of or the day before the robbery, he called the police to protect him. Secondly, the second piece of evidence which demonstrates that he did not have the capacity to provide the drugs was that on March 10th, when he was visiting the victim's sister and her friend in Sandusky, where he had come from Canton with Rex, he had promised to provide her marijuana. Yet he left without doing so. The following day, March 11th, the day of the robbery, there was a phone call between the victim's sister and Gibson. At that time, he again promised to provide marijuana to her. He said he was coming to Sandusky to do so, yet he never did. And I would also point out that Gibson, in his interview, March 11th, had said that he  And in his March 19th interview with police, he admitted that in a call with the victim, which occurred at 5.15 p.m. on March 11th, the victim said, oh no, the deal is called off, I don't need any drugs. And at that point, we see from the cell phone records, that a half an hour later, after Gibson was informed that the drug deal was called off, a half an hour later, he's still in Sandusky at 5.48, which was six minutes after we know that Rex entered the victim's house and committed the murder and the robbery. That was six minutes later, he was still in Sandusky. Your theory is that he didn't go in with Rex, he sent Rex in, right? Correct. Rex was the instrument of the crime. How did he know that there was money there to be stolen? How did Rex know? Because he had made this so-called drug deal before then. I thought it was called off, you said. Well, but before it was called off, there was evidence that the victim had amassed a large sum of money. Evidence that Gibson knew that? And, well, Gibson was the one who made the drug deal. There were numerous calls. You said it was called off, though, right? At 5.50. You say, I'm going to sell you a lot of drugs, which means I'm going to be getting money. At 5.50. Then they call up and say, call off the deal. They say, let's go rob him anyway. That requires an inference that there's money there to be robbed. Well, he knew that there was money because the victim was thinking it was a drug deal and he was amassing a large sum of money. Called off the drug deal, is what you said. Well, that was what he said. You did say that. Yes, that's what he said, but in reality, we know that they went forward anyways. That Gibson went forward anyways. I mean, I don't actually believe that he called off the drug deal, but that's what he told Gibson, and if Gibson had in fact... I'm trying to get at what the reasonable juror believes to come to the conclusion of intent to kill. Right. Is this reasonable juror believing that Gibson knew there was money to be had, or is this reasonable juror not believing that he knew that there was money? I think the reasonable juror would believe that he knew there was money to be had. How does the reasonable juror get to that conclusion? The fact that the deal wasn't at all called off, that seems to contradict that. Well, we could either find, the reasonable juror could find that, again, that Gibson did not have the capacity to make good on the drug deal. So he had to have gone there for a purpose. He was still in Sandusky. He was headed to Sandusky, even though he said that the deal was called off. But beyond that, my second point as to why the record shows that he had the intent to rob the victim is that he had a motive. He had actually two motives. One was he had this drug dealer who was basically threatening him, threatening his family, and he owed a large debt to him. From that, he had the motive to get the money. That only works if you win on the first point, which is that he had no drugs to sell. Right. If he had drugs to sell, that would be neither here nor there, that he had a big debt, because he could sell them and pay off the debt. Right. But there was no evidence of any drugs on the record that he had. I mean, and the prosecutor argued that. He said, no drugs. And the record showed that he did not have any drugs. So, in addition... Basically, your second argument is dependent on your first argument. I think that they are definitely... I think the jury looked at this holistically. They looked at all these points, and I'm going to go through the others as well. Excuse me? What's the third one? I mean, it seems clear to me, and I don't want to speak for my colleagues, it seems clear to me that there was evidence that he needed money. Yeah. I got that. Right. What's the third one? Well... That's neither here nor there, if he had drugs, because he could have got money from selling the drugs. Right. But there's no evidence that he had the capacity to make good on that. And he needed money for another reason. Not only was there some urgency for him to get in touch with his drug dealer to let him know that he had the money, he made that call right after the robbery. First thing, when he arrived in Michigan, he made the call to his drug dealer. Is that the third argument, or are you sure? No. No. What's the third argument? Well, I still... I want to complete, Your Honor, the argument on motive. He also had a gambling habit. The defense presented him evidence, in its case, through his girlfriend, Gibson's girlfriend at the time, that he frequented the casino four to five days a week. And what did he do after the robbery? His last stop before dropping... I mean, after dropping off Rick's was he went to the casino, where he was seen on the surveillance cameras at 813. His bets and buy-ins were tracked. They were substantially more than usual by multiple times. He spent seven hours in the casino that evening, which, again, was multiple times what he normally spent. Okay. So my third, other than motive and no drugs, my third argument is consciousness of guilt, which I believe you brought up. And that is, although he was very close with the victim's sister, calling her some ten times a week before the robbery and murder, after the crime, he did not return her 16 phone calls that she made or answer the phone. He similarly cut off all contact with the victim's mother, who he was so close with that he called Mom. After the crime, he stopped visiting her. Finally, he changed his phone number on March 14th. All these actions, this conduct, indicates a consciousness of guilt. And I think it does go to intent. If he had been simply a bystander, if his involvement was innocuous, he wouldn't have had to resort to this very drastic conduct. He could have explained to the family that he was so close with that this was just some big mistake, he did not know about it, and he wasn't involved. Yet, this conduct... He wasn't involved. But the question is whether he... Well, I want to ask the legal question. What if, in fact, as opposing counsel says, he had no idea of murder? He just wanted to know. If a guy comes out with a wad of money and says, you know, I decided at the last minute to murder him, here's the money. And the guy says, gee, that's a shame, but let's celebrate. Would that be enough to convict him? I would say no, but I would say the facts are different. If that's the case, then I don't see how all these... If that had happened, you certainly wouldn't call a sister and say, we're spending the money that my buddy stole from your brother who's dead now. I mean, I can't imagine anyone would call your, however close you were with a girlfriend. But, Your Honor, we have to look at this. The standard is it's viewed in the light most favorable to the prosecution. Well, but most favorable to the prosecution is that he didn't call and that there were good reasons for not calling, right? No, I would say if it's viewed in the light most favorable to the prosecution, he didn't call because he knew he was involved in this robbery. He had the motive to be involved. He knew this whole thing was simply a ploy to get in there and to rob him. And I would argue that these are all reasonable inferences and that any conflicting inferences under Jackson have to be resolved in favor of the state. And the state does not have to rule out every hypothesis except for guilt when applying the standard. And I would also, a number of other things I think are also very telling in this case, and that is the jury was given the option of convicting on the lesser included offense of murder where an aggravated robbery was, excuse me, the killing of the victim was approximate result of the aggravated robbery. And that particular offense did not involve the purpose to kill. Yet, the juror declined to convict on the lesser included offense and chose instead to convict on an offense which involved a purposeful killing. And again, under Jackson, the theory behind it is that we should pay deference to the jury's verdict. And the fact that they did not convict on this lesser included offense makes clear that they did see this as a purposeful killing. And I would also point out that I would be hard pressed to find a reasonable juror who wouldn't conclude that Gibson had the intent to murder Ricks once he was complicit in the robbery to avoid him, that is Calvin, identifying him as a witness in the case. Once he had the intent to rob him, which I believe the evidence does show that he did, he had to have killed him. There was no choice. Gibson and Ricks were business partners. They had a long history of doing drug deals. And the night before the robbery and murder, Gibson had introduced Ricks to Calvin Harper, the victim. And all the witnesses that testified, or most I should say that testified that were family and friends, knew that Calvin Harper was anticipating a drug deal. And they knew that Gibson was involved in that. So it is improbable that a reasonable juror would not find the intent to kill him once they had robbed him. And I would also like to respond to something that was said in the reply brief, which is that somehow the petitioner argues that this conviction was inconsistent with an acquittal on prior calculation and design. And I do not think that an aiding and abetting or complicity conviction is inconsistent because the prior calculation and design requires a mental plan, which includes a studied consideration of the means and methods of causing the death. And the complicity statute does not require such a high level of planning. So the two are not inconsistent. I see my time is up. If the court has any other questions, I would be happy to answer them. Thank you. Thank you. If it pleases the court, just a few points. With respect to this drug deal, he was convicted of that, as you know. And it wasn't a conviction based upon this notion that he made an offer. I mean, that's not what the jury was instructed. The jury was instructed in I.D. 2813, the defendant is charged with complicity in the offense of trafficking in cocaine. A similar instruction was given on marijuana. He was convicted of both. Before you can find the defendant guilty, you must find blah, blah, blah, that the defendant knowingly aiding, abetting, or conspiring with another to commit the offense of knowingly selling or offering to sell. I mean, there's no, the jury didn't... You can offer to sell something you don't have. You can, but there was no evidence to suggest that there were no drugs. I mean, there's certainly an inference the jury could reasonably draw. Does it argue that there were no drugs? I'm sorry? Does it argue that there were no drugs? I don't think it was argued that there was no drugs. I don't remember that. Now, the Assistant Attorney General said she does believe that's what the argument was made in closing. I don't believe that was the case. The deal, the thing was, Gibson was the weed guy. He was a marijuana guy. Is there any evidence that he had drugs? There was evidence he had marijuana. I mean, that was the prosecutor's argument, was that he had marijuana. A large amount of marijuana that would get him enough to pay off the... Yeah. Well, I don't know about that, Your Honor. I don't know about that. But the prosecutor's theory was that he had a ton of marijuana, or a bunch of marijuana in the trunk, and was going to deliver it to the sister of Harper, but didn't. But he was the weed guy. Ricks was the coke guy. That's why Ricks was brought into this. That was the whole theory here. So for Gibson... Say that again. What was the whole theory? That Ricks was brought into this because he was the guy that would be able to get the cocaine. That's what the deal with Harper was going to be. It was the coke deal. He had 20 grand, but the understanding of Gibson and Harper, or Gibson and Ricks from the night before, this was going to be a four and a half ounce deal, is what I remember the testimony being. And so that's, you know, Gibson's understanding, if he's the driver... He sends Ricks in with the drugs on him? Is that the thing? Yeah. I mean, that's certainly an understanding that Gibson could reasonably have had, and there's no evidence... Was there evidence of drugs being on Ricks when he went in? There's no evidence of that. I mean, here's the thing. The jury relied on the evidence. Here's my evidence that there must have been enough of a comfort level that he had the drugs, is because Harper let him in the house. Harper let him in the house. I mean, he's the only one that went in that house. He's the only one. The only two people that know what happened are Harper, who's deceased, and Ricks, who went in the house. There's no evidence that Gibson was anywhere near the house. He didn't serve as a lookout or hold the guns. People would... None of that. He's a guy at best... There's evidence that he was near the house. There's evidence... They held around with each other. They drove with each other, and he was within a mile or two of the house. Okay. Fair enough. I don't dispute that. I don't dispute that. I don't dispute that he had probably let him... And there was evidence that Ricks was seen going, I guess, by himself... Correct. ...in the house. By the lookout. But Harper had a lookout. Harper looked out. So he had somebody watching for him. He didn't see him, but saw Ricks, and there's evidence that they palled and drove together, both before and after, right? I think, construing the evidence... You had to drop him off at some point. Construing in the evidence in the light most favorable to the State, I... That's not what I'm talking about. Exactly. I say you take all that as a given. You do not have proof beyond a reasonable doubt of aggravated murder on those facts. Take them all. But what do you do if the jury is reasonably concluding that there was no drug deal going down here? I don't think you do. Absolutely. And then all this other stuff becomes more important. You're speculating what's in Gibson's mind. There's no belief, there's no reason to believe Gibson was engaged in a plan, a common scheme, with a gun. Where's the evidence? Gibson even knew there was a gun. A common scheme that someone's going to go in, behind closed doors, rob and kill this guy, and then come out with a bunch of money. Where's the proof that Gibson knew that was going to happen? There's got to be proof of that. There's got to be some proof that a jury can make a reasonable inference that he had that intent to kill. Your Honors, there just is not proof of that in this record. There might be a reasonable suspicion you could make, but this Court itself says reasonable speculation isn't enough. It's a stronger inference, maybe still not strong enough for you, but a stronger inference if there were no drugs. A stronger inference for the government? For the government. It becomes stronger if there were no drugs. It may not be strong enough from your perspective. I understand that argument, and you should make that argument. But it moves the needle a little bit, or not. I mean, it makes it a stronger argument, because if he did have the drugs, then it's just become sort of speculation that what he did instead of selling the drugs was to murder the guy and grab the money. I think what you need, Your Honors, is you need proof he knew there were no drugs. There's none of that. There's none of that. Is there evidence from which a jury could conclude that he knew there were no drugs? No, there's no evidence from which a jury could conclude that. It would be just guesswork for a jury to think he knew there were no drugs. Total guesswork. In fact, I would think Harper letting him in, a savvy drug dealer, even Harper believed there were drugs. Harper has better insight on that than the jury. He let him in. Thank you. Case will be submitted.